**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES,** | : | |
| | : | |
| *v.* | : | |
| | : | **CASE NO. 21-CR-00148(JEB)** |
| **DEREK JANCART,** | : | |
| | : | |
| *Defendant.* | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Derek Jancart ("Jancart"), by and through undersigned counsel respectfully submits this memorandum in aid of sentencing.  For the reasons stated below, Mr. Jancart respectfully requests that the Court sentence him to a term of probation of 24 months and $500.00 in restitution.

**FACTS**

On January 6, 2021, Derek Jancart attended the "Stop the Steal" rally in the District of Columbia.  Once the rally was over, he headed back to his hotel room.  Later, he heard that other rally-goers were marching towards the Capitol and he decided to go see what was happening.  He carried with him a gas mask that he had in case tear gas was used against the protesters as had happened during last year's social justice protests.  While on the Capitol grounds, he witnesses others pushing past police lines and enter the Capitol itself.  He did not push against the police lines and only continued into the Capitol once the police lines had already been breached.  He then entered the Capitol building through an open door where police were letting people in.  He did not break down any window or door nor commit any act of violence as he entered.  He then wandered around the Capitol building.  He did not hide his face nor carry any weapons, poles or flags; he did not break anything; he did not yell; he did not engage in any

violence; he did not confront anyone.  All he did was walk around and occasionally take pictures.
*See Exh.* 1.[1]  When ordered to leave by police officers, he did so.  Hours after Mr. Jancart left the
Capitol, he posted various comments on Facebook pertaining to the events of the day.

## STATUTORY AND GUIDELINE ANALYSIS

**Statutory Penalties**

Mr. Jancart entered a plea to Count 3 of the information, charging him with
Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section
5104(e)(2)(D), which carries a maximum sentence of six months of imprisonment, pursuant to
40 U.S.C. § 5109(b); a fine of not more than $5,000, pursuant to 18 U.S.C. § 3571(b)(6).  He
agreed to pay restitution of $500.00.  Supervised release does not apply to this misdemeanor
offense; however, a period of probation of up to five years applies.

**Guidelines Calculation**

Pursuant to USSG §1B1.9, the U.S. Sentencing Guidelines do not apply to any
count of conviction that is a Class B or C misdemeanor or an infraction. Accordingly, the US
Sentencing Guidelines do not apply to this count.

## SECTION 3553(a) FACTORS

18 U.S.C. § 3553(a) mandates that a court "impose a sentence sufficient, but not
greater than necessary, to comply with" federal sentencing goals.  In imposing a sentence that is
"sufficient, but not greater than necessary," the court should look to the statutory factors listed
under Section 3553.  These factors include:

---

[1] Because Exhibit 1 contains CCTV video deemed sensitive pursuant to the current protective order, it will be filed separately and under seal.

1.      **Nature and circumstances of the offense and history and characteristics of the defendant**

While the events of January 6, 2021, at the Capitol were unprecedented, violent and shocking, Mr. Jancart's own conduct certainly was not.  The government pays lip service to the tenet that "each defendant should be sentenced based on their individual conduct," Gov. Memo. at 12, yet it spends a considerable number of pages of its 22-page sentencing memorandum recounting the conduct of others including Erik Rau, who accompanied Mr. Jancart to the Capitol.

Mr. Jancart's conduct is undisputed.  He did not engage in any violence; did not break anything; did not confront or fight with police.  He did not enter any offices; did not enter the House or Senate floor; he did not take any "souvenirs;" did not contemplate defecating on anyone's desk; did not yell that "we have the police surrounded!"; did not have a pickaxe with him; did not yell "traitors gonna hang!"; did not yell "go, go, go!" when police lines were breached.  He also was not affiliated with any organized or extremist group.  He did mill about the Capitol building taking pictures and left when told to do so.

The government attempts to use his First Amendment protected Facebook postings to paint him as some type of future danger deserving incarceration.  Nothing could be further from the truth.  It is notable that all the postings listed by the government occurred after 5:24 p.m., after he left the building and as he was discussing the events of the day.  In those postings, Mr. Jancart expresses his opinions and observations.  He does not make any calls to violence; he does not incite a crowd; he does not make any threats.  In fact, there is a telling post where Mr. Jancart says, "I don't condone breaking anything or hurting anyone yesterday.  That wasn't the purpose of what the absolute vast majority were there to do.  Like 99.7%." Gov. Memo. at 9.  In an exchange on January 10, 2021, when another poster says that he hopes

revolution does not happen, Mr. Jancart responds, "Yeah.  I hope not too…."  Gov. Memo. at 10. Contrary to the governments assertion that his "own words demonstrate a very real possibility of future violence in the name of "revolution," Mr. Jancart's own words show that he did not and does not condone violence.

       The government puts forth several factors for the Court to consider Ms. Jancart's conduct "on a spectrum."  Gov. Memo. at 12.  These factors clearly weigh in favor of a probationary sentence:

       1)     Whether, when and how the defendant entered the Capitol building – Here, Mr. Jancart peacefully entered the building after others had already broken in.  He did not break any windows or doors and did not assault any police guarding the premises;

       2)     Whether the defendant engaged in or incited any violence – the clear and undisputed answer is no;

       3)     Whether the defendant engaged in any acts of destruction – once again, the clear and undisputed answer is no;

       4)     The defendant's reaction to acts of violence or destruction – here, the government has no evidence that Mr. Jancart condoned, incited or otherwise endorsed violence. The government points to its Exhibit 1, a video of Mr. Jancart outside the Capitol building to argue that Mr. Jancart "encouraged and celebrated the violence of that day" by posting that video to Facebook.  Gov. Memo. at 2.  All he did was post a video of events he witnesses, as did thousands of others who were there.  It follows from the government's argument that the person who posted the video of the murder of George Floyd at the hands of police endorsed the police's action by posting the video.  The argument makes no sense and is not supported by the facts especially when Mr. Jancart also posted "I don't condone breaking anything or hurting anyone

yesterday.  That wasn't the purpose of what the absolute vast majority were there to do.  Like 99.7%."  Gov. Memo. at 9;

       5)      Whether during or after the riot, the defendant destroyed evidence – the government claims that Mr. Jancart "*likely* destroyed evidence by deleting videos and message threads from his phone.  Gov. Memo. at 2 (emphasis added).  Mr. Jancart denies that he destroyed any evidence and the government cannot show that he did;

       6)      The length of the defendant's time inside of the building, and exactly where the defendant traveled – according to the government, Mr. Jancart spent nearly 40 minutes inside the Capitol, Gov. Memo at 6, and remained in public places.  He did not enter any offices or the Senate or House floor and left when told to do so.  *See generally* Gov. Memo. at 5-7; Exh. 1.  During those 40 minutes, he did not engage in violence or destruction;

       7)      The defendant's statements in person or on social media – the government makes much of Mr. Jancart's postings on Facebook and argues that Mr. Jancart "used Facebook to spread false propaganda that the attack was 'peaceful[,] comparing the riot to an 'unscheduled tour.'"  Gov. Memo. at 8.  The government ignores the fact that Mr. Jancart's posting are protected by the First Amendment, that he has a right to his opinion and that he cannot be punished for those opinions.  Nevertheless, it is telling that all the postings cited by the government occurred following the events of January 6 and were informed by the heightened passions of the day;

       8)      Whether the defendant cooperated with, or ignored, law enforcement – here the government itself concedes that Mr. Jancart "exited through a southeast exit of the Capitol only after being instructed by officers to leave."  Gov. Memo. at 7.  There is no evidence

that at any point during his time in the Capitol Mr. Jancart ignored commands of police or otherwise engaged them in a confrontational manner;

        9)      Whether the defendant otherwise exhibited evidence of remorse or contrition – Mr. Jancart has accepted responsibility for his actions and is remorseful for his conduct. The Facebook postings that the government asserts demonstrate Mr. Jancart's lack of remorse all took place immediately after the events of January 6 when passions ran high. The government also makes much of Mr. Jancart's post-arrest interview where he expressed certain beliefs about the events of January 6. What the government fails to mention is that in that same interview he did not express any belief in future acts of violence or give any indication that he planned to repeat his conduct of January 6. Nevertheless, a "district court may not pressure a defendant into expressing remorse such that failure to express remorse is met with punishment." *United States v. Lawrence*, 662 F.3d 551, 562 (DC Cir. 2011).

### 2.      Mr. Jancart's History and Characteristics

        Mr. Jancart is a 39-year-old single man, who honorably served his country in the Air Force from 2003 to 2007. He deployed to Afghanistan and South Korea. Mr. Jancart then served in the National Guard from 2008 to 2014. He is gainfully employed as a steelworker in Ohio and has no prior criminal record except for traffic offenses. He has complied with all conditions of pre-trial release and has demonstrated that he can follow the Court's instructions if placed on probation. The people that know him best know him as a good man who helps others and "has always put other people and their needs ahead of his needs." Exh. 2; Exh. 3.

### 3.      Seriousness of the offense, respect for the law, just punishment

        The offense of conviction is undoubtedly serious, especially in the context from which it arose. However, Mr. Jancart has clearly demonstrated his respect for the law and the

legal process by agreeing to plead guilty as soon as the government made him a plea offer, accepting responsibility and foregoing a costly trial.  A sentence of imprisonment will result in the loss of his employment and his home – much too great a punishment given his actual conduct.

> **4.      Deterrence to criminal conduct and protection from further crimes**

Except for a few traffic offenses, Mr. Jancart has never been in any legal trouble before.  There is nothing in his past or even in the current situation that would indicate that he will break the law again or that society must be protected from him with incarceration.   The government asserts that his own words demonstrate a very real possibility of future violence. Gov. Memo. at 15.  However, the government ignores the simple fact that January 6 was a singular and unique event.  As the Court of Appeals noted about the events of January 6 in *United States v. Munchel*, 991 F.3d 1272 (DC Cir. 2021):

> The District Court also failed to demonstrate that it considered the *specific circumstances that made it possible*, on January 6, for Munchel and Eisenhart to threaten the peaceful transfer of power. The appellants had a *unique opportunity to obstruct democracy on January 6 because of the electoral college vote tally taking place that day, and the concurrently scheduled rallies and protests*. Thus, Munchel and Eisenhart were able to attempt to obstruct the electoral college vote by entering the Capitol *together with a large group of people who had gathered at the Capitol in protest that day*. Because Munchel and Eisenhart did not vandalize any property or commit violence, *the presence of the group was critical to their ability to obstruct the vote and to cause danger to the community. Without it, Munchel and Eisenhart—two individuals who did not engage in any violence and who were not involved in planning or coordinating the activities—seemingly would have posed little threat.*

*Munchel*, 991 F.3d 1284 (emphasis added).  Here, the same can be said.  Besides his conduct on January 6, which was nonviolent and could only have occurred on that day, there is simply no indication that he is a future danger to society.

**5.      Need for treatment and training**

Mr. Jancart has smoked marijuana in the past.  However, he easily stopped smoking once placed on pre-trial release, demonstrating that he does not need treatment or counseling.

**6.      Kinds of sentences available and the sentencing ranges established**

The offense of conviction, Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D), carries a maximum sentence of six months of imprisonment, pursuant to 40 U.S.C. § 5109(b); a fine of not more than $5,000, pursuant to 18 U.S.C. § 3571(b)(6).  He agreed to pay restitution of $500.00.  Supervised release does not apply to his misdemeanor offense; however, a period of probation of up to five years applies.

**7.      Need to avoid sentencing disparities**

The government argues that this case should only be compared to that of Erik Rau, Mr. Jancart's companion on January 6.  That argument unjustifiably seeks to limit the Court's consideration of other cases where defendants were sentenced to probation for conduct similar to Mr. Jancart's.  For example, in *United States v. Bustle*, 21-CR-0238(TFH), the defendants similarly entered the Capitol after the building had been breached, walked around for about 20 minutes, did not engage in violence or cause damage, and were sentenced to 24 months of probation.   In *United States v. Morgan Lloyd*, 21-CR-0164(RCL), the defendant similarly entered the Capitol on January 6, walked around and took pictures.  She also posted to Facebook that "I'm here.  Best day ever.  We stormed the capitol building me and Donna Bissey were in the first 50 people in."  She further posted that "It was a day I'll remember forever.  I'm proud that I was a part of it.  No Shame.  BTW turn off the #FakeNews."  She also called the events

8

"the most exciting day of my life."  Gov. Sent. Memo at 3 in 21-CR-0164 (Doc. 22).  The government in that case recommended probation and Judge Lamberth sentenced Morgan Lloyd to 36 months of probation.  These cases are similar to the instant matter and should inform the Court's sentence of probation for Mr. Jancart.

It is also notable that the probation office has recommended a term of 24 months of probation after considering all the sentencing factors.  The justifications for that recommendation are that "Mr. Jancart's culpability appears to be minimal in contrast with rioters who destroyed or stole government property and assaulted or threatened the law enforcement officers on that date." Doc. 24 at 1.  Furthermore, "Mr. Jancart has been in compliance with his pretrial supervision and the terms of his release. He does not appear to present a danger to the community and goals of sentencing may be accomplished through a non-custodial sentence of probation supervision. Rehabilitation does not appear to be a particular concern for this defendant." *Id.* at 2.

**8.    Need to provide restitution**

Mr. Jancart has agreed to pay a total restitution of $500.00.

## **CONCLUSION**

Mr. Jancart recognizes that he should not have been in the Capitol on January 6 and that he must be punished for that conduct.  However, his behavior on that day is not deserving of a prison sentence considering that he did not engage in violence of destruction.  His conduct should not result in incarceration and personal ruin.

Mr. Jancart respectfully requests that after considering the § 3553(a) factors, the Court impose a sentence of 24 months of probation.  Considering the relevant case law and pursuant to 18 U.S.C. § 3553(a) such a sentence is sufficient but not greater than necessary.

**Dated**: Washington, DC
September 26, 2021                    Respectfully submitted,

**BALAREZO LAW**

/s/

By:    _____
A. Eduardo Balarezo, Esq.
D.C. Bar # 462659
400 Seventh Street, NW
Suite 306
Washington, DC  20004
Tel: (202) 639-0999
Fax: (202) 639-0899
E-mail: aeb@balarezolaw.com

*Counsel for Defendant Derek Jancart*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 26th day of September 2021, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via ECF to the Parties in this matter.

/s/
_____
A. Eduardo Balarezo